IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| LAURA M. D'ELIA, | ) | |
| | ) | Civil Action No. |
| Plaintiff, | ) | |
| | ) | 1:11-cv-03521-SCJ-JFK |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| THYSSENKRUPP ELEVATOR | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

_____

## PLAINTIFF'S RESPONSE TO DEFENDANT THYSEENKRUPP ELEVATOR CORPORATION'S MOTION FOR SUMMARY JUDGMENT

COMES NOW Plaintiff, Laura D'Elia, by and through undersigned counsel,[1] and respectfully submits this memorandum in opposition to Defendant ThyssenKrupp Elevator Corporation's Motion for Summary Judgment.

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff seeks not to reform Title VII into a "civility code," but; rather, seeks its safeguards. Specifically, Title VII makes it unlawful for an employer to discriminate against an individual with respect to her compensation on the basis of

---

[1] The circumstances leading to the involuntary withdrawal of Plaintiff's previous counsel are unfortunate. See, Dkt. 40 and 42. As a result of those circumstances, Plaintiff had limited opportunity (two depositions and no written discovery) to fully and properly discover factual information.

her race.  This case concerns the discriminatory and retaliatory actions taken against Laura D'Elia by ThyssenKrupp Elevator Corporation ("TKE")—actions that had a direct and deleterious result on Laura's compensation.

In August 2010, Laura complained of discrimination.  She was then retaliated against and suffered further discrimination and retaliation in compensation.  After she complained, Laura never received a performance review, even though TKE's policy is to provide their employees with an annual review.  Performance reviews at TKE are important because they determine an employee's pay raise and bonus amount for the year.  Surprisingly, Laura received a pay raise and bonus in 2010, even though she did not receive a review.   Laura's pay raise and bonus for 2010 was the lowest in her group.

The issue, here, is not whether Laura received a pay raise or bonus,[2] but whether Laura was denied a higher pay raise and bonus on the basis of racial animus and retaliation.

The evidence will show that a reasonable inference of race discrimination and retaliation can be drawn based on Laura's perfomance review, or lack thereof.  The evidence will also show that Laura's performance review rating was consistent

---

[2] This is undisputed.

with her African-American co-workers, but her pay raise and bonus related to the review were substantially less.  This evidence is sufficient to establish a factual dispute issue and warrants submission to a jury.  Therefore, Defendant's Motion for Summary Judgment is without merit and should be denied.

## II.   STATEMENT OF FACTS

Plaintiff has contemporaneously filed a detailed Statement of Additional Material Facts to Which a Genuine Issue Exists for Trial and respectfully requests that the Court adopt those facts as if fully set forth herein.

Plaintiff now recites *some* of those facts necessary to establish a genuine issue of material fact.

### A. Mistreatment in the CAP Department

Lisa Gray, TKE Manager, made the decision to hire Plaintiff while Joi Simmons, TKE Supervisor, was on leave.  (Pl. Dep. at pp. 58:21-59:12).  Felicia Jounge, African American, started in the CAP Department one month after Plaintiff.  (Pl. Dep. at pp. 59:22-60, 65:25-66:19, 115:25-116:10; Simmons Dep. at p. 127:1-4).  While in the CAP Department, Plaintiff received less pay than African Americans. (Pl. Dep. at p. 114:1-2). Simmons referred to Plaintiff and Kasey Allen as the "White girls."  (Pl. Dep. at p. 210:2-7).

### B. Complaints of Race Discrimination and Retaliation

Plaintiff complained to Karin Gibson, TKE Human Resources, that Simmons does not like White people.   (Pl. Dep. at p. 153:2-5).   Plaintiff complained numerous times to TKE without resolution to her complaints.  (Pl. Dep. at pp. 78:16-79:1).  Plaintiff called TKE's Compliance Hotline anonymously, because after complaining to human resources Plaintiff's work environment became more hostile.  (Pl. Dep. at p. 169:14-18).   After complaining of race discrimination, Plaintiff received disciplinary warnings.  (Pl. Dep. at pp.180:8-181:3, 234:9-18).  On August 16, 2010, Plaintiff informs Simmons and Gray about her intent to file an EEOC charge of discrimination.  (Pl. Dep. at. pp. 214:22-215:12).

### C. TKE's Performance Review Equals Pay Raise and Bonus

Once a year TKE employees are supposed to receive a performance review, which determines if an employee receives a raise or a bonus.  (Simmons Dep. at p. 65:1-11).  In 2010, Simmons delivered a performance review to every employee in the CAP Department, except Plaintiff.  (Simmons Dep. at pp. 185:17-186:4). Kindall Cooper's, African American, performance evaluation grading was "meets standards." (Simmons Dep. at p. 81:17-18).   Felicia Jongue's performance

4

evaluation grading was "meets standards." (Simmons Dep. at p. 81:17-18).   In December 2010, Plaintiff complained to human resources about not receiving a 2010 pay raise.  (Pl. Dep. at p. 119:18-22).

## III.   STANDARD OF REVIEW

Summary judgment should not be granted if there are genuine issues of material fact.  Fed. R. Civ. P. 56(a).  In determining whether such issues of fact exist, "the court should view the evidence and any inference that may be drawn in the light most favorable to the nonmovant." Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).  "Although the court should review the record as a whole, it *must disregard all evidence favorable to the moving party that the jury is not required to believe[,]...* giv[ing] credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is *uncontradicted and unimpeached*, at least to the extent…[it] comes from *disinterested witnesses*." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000) *(*emphases added; citations and internal quotation marks omitted).  Because this is a summary judgment motion, the Plaintiff only needs to raise a genuine issue of material fact.

## IV. <u>ARGUMENT</u>

### A. Plaintiff's EEOC Charge

The EEOC charge is the *starting point* for determining the permissible scope of the judicial complaint. <u>Eastland v. Tennessee Valley Authority</u>, 714 F.2d 1066, 1067 (11th Cir. 1983). The EEOC charge, however, does not supplant the complaint. Rather, the charge gives the EEOC "the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." <u>Evans v. U.S. Pipe & Foundry Co.</u>, 696 F.2d 925, 929 (11th Cir. 1983).

The Eleventh Circuit has held that a plaintiff's judicial complaint is not limited to the scope of her EEOC charge, but; rather, the scope of the *EEOC investigation* that can reasonably be expected to grow out of the charge of discrimination. <u>Alexander v. Fulton County, Ga.</u>, 207 F.3d 1303, 1332 (11th Cir. 2000) (emphasis added), <u>see</u> <u>also</u> <u>Sanchez v. Standard Brands, Inc.</u>, 431 F.2d 455, 466 (5th Cir. 1970) (finding that allegations in a judicial complaint filed pursuant to Title VII may encompass any kind of discrimination like or related to the allegations contained in the charge). Accordingly, the Eleventh Circuit has found that the scope of an EEOC charge should *not* be strictly interpreted. <u>Gregory v.</u>

Georgia Dept. of Human Resources, 355 F.3d 1277, 1279 (11th Cir. 2004) (citing
Sanchez, 431 F.2d at 465) (emphasis added).

It is undisputed that Plaintiff filed an EEOC charge alleging race
discrimination and retaliation.  [Dkt. 1, Ex. A].  Defendant attempts, however, to
limit the scope of Plaintiff's claims to only those dates and/or incidents of
discrimination and retaliation identified in Plaintiff's EEOC charge.  Defendant's
approach would require Charging Parties to enumerate every date and incident of
discrimination in their charge, which would consequently result in voluminous
pages of attachments, while also having the unintended, or intended, consequence
of discouraging employees to engage in the EEOC process.   Furthermore,
Defendant's approach is inconsistent with the approach that the Eleventh Circuit
follows, i.e., a judicial complaint is not limited to the scope of an EEOC charge,
but the scope of the EEOC investigation. Alexander, 207 F.3d at 1332.

Here, Plaintiff's EEOC charge properly put Defendant on notice to the
discriminatory claims made against it.  Although the charge did not include each
and every incident of race discrimination and retaliation endured by Plaintiff, it is
reasonable to expect that the dates and incidents not identified in the charge, and
that relate to race discrimination and retaliation, were included in the EEOC's

investigation.   Therefore, Plaintiff's claims should not be limited to the events in August 2010.[3]

## B. Plaintiff Has A Prima Facie Case Of Race Discrimination And Retaliation

Under Title VII, an employer may not discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of that individual's race.   42 U.S.C. § 200e-2(a)(1).   A plaintiff can establish a *prima facie* case of race discrimination by showing that: (1) she was a member of a protected class,[4] (2) she was subject to an adverse employment action, (3) her employer treated similarly situated employees who were not members of her protected class more favorable, and (4) she was qualified to do the job.   Burke-Fowler v. Orange Cnty., 447 F.3d 1319, 1323 (11th Cir. 2006), see also, Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997) (noting that a *prima facie* case should not be onerous and only requires that the plaintiff establish facts adequate to permit an inference of discrimination.)

Once a plaintiff has established a *prima facie* case, a legal presumption of unlawful discrimination arises and the burden of production shifts to defendant to

---

[3] Plaintiff has limited her arguments to the events surrounding August 2010.  Plaintiff, however, does not concede that the discrimination and retaliation she endured is limited to this time frame.
[4] "Reverse discrimination" claims will be analyzed the same as any race discrimination claim.   Bass v. Bd.of Cnty. Comm'rs, 256 F.3d 1095, 1102-03 (11th Cir. 2001).

articulate a legitimate, nondiscriminatory reason for the challenged employment action.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973), see Gillis v. Ga. Dep't of Corr., 400 F.3d 883,887 (11th Cir. 2005) (noting that the McDonnell Douglas framework should be liberally construed).  If articulated, the plaintiff must show that the defendant's reason was pretextual.  Id. at 804, 93 S. Ct. at 1824.

In addition to Plaintiff's claim of race discrimination, Plaintiff also has asserted a claim of retaliation.  A plaintiff asserting a retaliation claim under Title VII must show that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action.  Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001).

The evidence discussed *infra* establishes a genuine issue of material fact to every element of Plaintiff's race discrimination and retaliation claims.

### 1. *The Failure To Provide Plaintiff With A Performance Review, When That Review Directly Correlates To Compensation, Is An Adverse Employment Action*

Actions that negatively affect salary are adverse employment actions. Numerous actions, which alone might not be adverse employment actions, are

adverse if combined with an effect on salary.  For example, an evaluation alone "cannot be considered an "adverse employment action" *unless* it results in tangible economic consequences."  McDaniel v. Fulton County School Dist., 233 F. Supp.2d 1364, 1385 (N.D. Ga. 2002).

Title VII explicitly prohibits discrimination in compensation.  42 U.S.C. § 200e-2(a)(1).  A performance evaluation that directly results in the denial of a pay raise of any significance clearly effects an employee's compensation and thus constitutes an adverse employment action under Title VII.  Crawford v. Carroll, 529 F.3d 961, 970, citing Gillis 400 F.3d  at 883.  In Gillis, as here, plaintiff alleged that she was retaliated against and subjected to racial discrimination in violation of Title VII when she received smaller raises than she otherwise would have received because of her performance evaluation.   The court found that plaintiff's evaluation and plaintiff's compensation were inextricably intertwined. Id. at 887.

Here, it is undisputed that Plaintiff did not receive a performance review in 2010.  (Simmons Dep. at p. 73:20-74:8; Gibson Aff. ¶15; Simmons Dec ¶5).  In fact, although performance reviews are supposed to be given once a year (Simmons Dep. at p. 65:1-11), Plaintiff never received a performance review at

any time while reporting to Simmons.[5]  (Simmons Dep. at p. 73:20-24).  At TKE performance reviews are important because they are directly correlated to compensation and affect both an employee's annual raise and/or bonus.  (Simmons Dep. at p. 65:1-11).  Plaintiff, Kindall Cooper (African-American), and Felicia Jongue (African-American) received a performance review grading of "meets standards." (Simmons Dec. ¶5 and Ex. 2, Simmons Dep. at p. 81:14-16, Simmons Dep. at p. 81:17-18).  However, despite receiving identical ratings as Cooper and Jongue, Plaintiff only received a 2% raise and $1,575 bonus; whereas, Cooper received a 2.5% raise and $1,825 bonus and Jongue received a 2.75% raise and $1,700 bonus.  (Gibson Aff. Ex. 12).

Defendant argues that Plaintiff's 2010 raise and bonus were commensurate with other CAP Specialists.  However, commensuration is not the test in evaluating whether an employee has been denied compensation, and as a result suffered an adverse employment action under Title VII.  Rather, it is whether the performance review directly disentitled an employee to a higher raise.  Gillis 400 F.3d  at 887.

---

[5] There exists a factual dispute as to whether Simmons "completed" a Performance Review for Plaintiff or merely "drafted" a Performance Review.  Defendant argues that the fact that Simmons did not personally meet with Plaintiff after the August 16 meeting is not an adverse job action; however, Plaintiff argues that the adverse job action is that no one from TKE personally met with Plaintiff regarding her review and the basis for any raise or bonus.

Here, Plaintiff received the same ratings as two African American employees, but did not receive either an equivalent bonus or raise.   Unlike Plaintiff, other CAP Specialists received the benefit of discussing their review with Simmons, which provided them with the opportunity to debate the merits of a poor review or to appeal their review to TKE management.   Plaintiff was denied this opportunity and, as a result, Plaintiff had no basis in which to contest her low raise or bonus.   Therefore, the evidence supports a finding that Plaintiff's review was inextricably intertwined with her low raise and bonus (the lowest in the CAP Department).

Defendant also contends that even though Plaintiff did not actually receive a performance review, the fact that she did receive a de minimis 2% raise and a $1,575 bonus in fiscal year 2010 proves that she did not suffer an adverse employment action.   These contentions belie Defendant's argument that Plaintiff did not suffer an adverse employment action and are pretextual.   Because performance reviews necessarily affect a TKE employee's salary and bonus, the absence of a performance review is per se indicative of an adverse employment action.   Furthermore, Defendant's failure to review the performance evaluation with Plaintiff, but, nonetheless, provide Plaintiff with a raise and bonus is

pretextual and perpetuates the inference that the raise and bonus were merely arbitrary and not based on actual work performance. This inference is sufficient to create an issue of material fact as to whether Plaintiff suffered an adverse employment action.

### 2. *Plaintiff Has Made A Prima Facie Case Of Race Discrimination*

Plaintiff was treated less favorably and subjected to greater scrutiny than her peers because she is White. Proof of discriminatory motive can be inferred from the mere fact of differences in treatment. Batey v. Stone, 24 F.3d 1330, 1334 (11th Cir. 1994).

Defendant contends that Plaintiff's race claim lacks evidentiary support. However, the record is replete with examples of Simmons' discriminatory treatment toward Plaintiff because of her race. For instance, Simmons referred to Plaintiff and Kasey Allen as the "White girls" (Pl. Dep. at p. 210:2-7); African American CAP's Specialists received a review and Plaintiff did not (Pl. Dep. at p. 122:22-25); and, Plaintiff received less pay than African Americans while in the CAP Department (Pl. Dep. at p. 114:1-2). These specific facts are sufficient to

support an inference that Plaintiff was subjected to discrimination based on her race by Simmons.

Although there is a factual dispute as to who actually hired Plaintiff,[6] assuming arguendo that Simmons hired Plaintiff, the "same actor" evidence holds no presumptive value.  Williams v. Vitro Servs., 144 F.3d 1438, 1443 (11th Cir. 1998), see also Accord Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 321 (3rd Cir. 200)("[I]t is conceivable that an employer who harbors a discriminatory animus may nevertheless allow one or two females to advance for the sake of appearances.")  Furthermore, Defendant argues that Simmons shares part of the same race as Plaintiff.  While Defendant and Plaintiff may share part of the same race, members of the same race may also act discriminatorily against one another.  See, e.g. Walker v. Internal Revenue Serv., 713 F. Supp. 403 (N.D. Ga 1989) (plaintiff, light-skinned African American, alleged that her supervisor preferred darker-skinned African-Americans).

The factual evidence supports a finding that Plaintiff was treated less favorably by Defendant.  A reasonable inference can be drawn from the factual evidence presented in this case that Plaintiff's maltreatment was more likely than

---

[6] Plaintiff states that she was hired by Lisa Gray (Pl. Dep. at pp. 58:21-59:12) and Defendant states Plaintiff was hired by Simmons (Simmons' Dep. at. p.112:4-5).

not a result of her race.  Plaintiff's performance was devalued because of her race and concomitantly so was her pay.  Similarly situated employees who were not of Plaintiff's race, however, were treated more favorably and received higher compensation, discussed *supra* Section IV. B(1).

### 3.   A Genuine Issue Of Material Fact Exists As To Whether Plaintiff Was Retaliated Against For Engaging In Protected Activity

The retaliatory conduct complained of by Plaintiff manifested itself as basically a continuation of the same conduct that forces the basis for her discrimination claim.  Plaintiff states a *prima facie* case of retaliation by establishing: (1) her participation in a statutorily protected activity;[7] (2) the occurrence of a subsequent adverse employment action; and (3) a causal connection between the protected activity and adverse action.  Weaver v. Casa Gallardo, 922 F.2d 1515, 1520 (11th Cir. 1991).

Plaintiff engaged in protected activity when she informed Simmons and Gray in the August 16, 2010 meeting that she was going to file an EEOC Charge. (Pl. Dep. at pp.214:22-215:12).  Not long after engaging in protected activity, TKE

---

[7] Defendant assumes that the only protected activity Plaintiff engaged in was her internal complaints; however, in the August 16, 2010 meeting Plaintiff informs Simmons and Gray that she intended to file an EEOC charge. Plaintiff's intent to file an EEOC charge is protected activity.  Lewis v. Zilog, 908 F. Supp. 931, 948 (N.D. Ga. 1995).

instructed Simmons not to provide Plaintiff with her performance review. (Simmons Dep. at p. 73:20-74:8; Gibson Aff. ¶15; Simmons Dec. ¶5.)   This is an undisputed fact.  The result: Plaintiff received the lowest raise and bonus amount. See generally, (Gibson Aff. Ex. 12).

Defendant argues that there is no causal connection between Plaintiff's protected activity and Defendant's subsequent adverse employment action against Plaintiff.  However, as Defendant readily acknowledges in its Motion for Summary Judgment, Plaintiff engaged in protected activity in the August 16, 2010 meeting. (Def.'s Motion for Summary Judgment, p.22).   Not long after this meeting, Defendant acknowledges it did not provide Plaintiff with a performance review because of the August 16, 2010 meeting.  Id. at 21.  Defendant's failure to provide Plaintiff with a performance review is bright-line retaliation, especially when the only reason the performance review was not given was based off of the August 16, 2010 meeting in which Plaintiff complained of discrimination and expressed her intent to file an EEOC charge.

Based on the factual record, Plaintiff has substantial and unequivocal facts to support her claim of retaliation.   For these reasons, Defendant's Motion for Summary Judgment fails.

**C. Plaintiff's Hostile Work Environment**

To establish a racially hostile work environment claim under Title VII, a plaintiff must show: (1) she belongs to a protected group; (2) she has been subject to unwelcome harassment; (3) the harassment was based on her race; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive work environment; and (5) a basis for employer liability.  See Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002).

In order to be actionable under Title VII, a racially objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find was hostile or abusive, and one that the victim in fact did perceive to be so.  Faragher v. City of Boca Raton, 524 U.S. 775, 118 S.Ct. 2275 (1998).  Hostile work environment claims are based on the cumulative effect of individual acts.  Id.  In evaluating the objective severity of the harassment underlying a Title VII claim, the Eleventh Circuit considers, among other factors: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and

(4) whether the conduct unreasonably interferes with the employee's job performance.  Harris v. Forklift Sys., 510 U.S. 17 (1993).

Defendant provides scant facts as to why Plaintiff's hostile environment claim fails as a matter of law.  It argues that Plaintiff cannot meet prongs (2), (3), or (4) as discussed *supra*.

Throughout Plaintiff's employment in the CAP's Department, Plaintiff was subjected to unwelcome harassment by Simmons and complained numerous times to TKE management without resolution.  (Pl. Dep. at pp. 78:16-79:1, Pl. Dep. at p. 169:14-18).  This unwelcomed harassment was based on her race.  (Pl. Dep. at p. 153:2-5).  Moreover, the unwelcomed harassment was sufficiently severe and pervasive that Plaintiff's doctor recommended that she take medical leave.  (Pl. Dep. at p. 33:15-34:5).  The undisputed fact that Plaintiff's medical leave was induced by Simmons' habitual hostile treatment of Plaintiff, objectively intimates that the severity of Simmons' conduct was great.  Therefore, Plaintiff's hostile work environment claim has sufficient facts to create a triable issue of fact.

# V.   <u>CONCLUSION</u>

To grant summary judgment, Defendant must prove that there is no genuine issue of material fact.  With all inferences being drawn against Defendant and in favor of the Plaintiff, Defendant has not met its burden of proof.

Defendant's contention that Plaintiff did not suffer an adverse job action is wrong.  As described above, Plaintiff's adverse job action is premised on TKE's failure to properly compensate Plaintiff due to her race and complaints of race discrimination.  This adverse job action is highlighted by the fact that TKE refused to provide Plaintiff with a performance review in 2010—a review that is directly correlated to annual pay raises and bonuses.

Therefore, there are triable issues of fact as to Defendant's adverse employment action.  For this reason, Defendant's motion for summary judgment should be denied.

Respectfully submitted this 11th day of January, 2013.

<div style="text-align:right">

s/Tremain C. Mattress, Esq.
Tremain C. Mattress
Georgia Bar No. 940529
Amanda Farahany
Georgia Bar No. 646135
Benjamin F. Barrett
Georgia Bar No. 039586

</div>

tmattress@bf-llp.com
ben@bf-llp.com
amanda@bf-llp.com

BARRETT & FARAHANY, LLP
1100 Peachtree Street, N.E.
Suite 500
Atlanta, GA 30309
(404) 214-0120 Telephone
(404)214-0125 Facsimile

COUNSEL FOR PLAINTIFF

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1D</u>

Pursuant to LR 7.1D, NDGa., counsel for Plaintiff certifies that this response brief has been prepared in Times New Roman 14 point, one of the acceptable fonts in LR 5.1C, NDGa.

Respectfully submitted this 11th day of January, 2013.

<div style="margin-left:40%">

<u>s/Tremain C. Mattress</u>
Tremain C. Mattress
Georgia Bar No. 940529
Amanda Farahany
Georgia Bar No. 646135
Benjamin F. Barrett
Georgia Bar No. 039586
tmattress@bf-llp.com
ben@bf-llp.com
amanda@bf-llp.com

</div>

BARRETT & FARAHANY, LLP
1100 Peachtree Street, N.E.
Suite 500
Atlanta, GA 30309
(404) 214-0120 Telephone
(404)214-0125 Facsimile

COUNSEL FOR PLAINTIFF

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed PLAINTIFF LAURA D'ELIA'S

OPPOSITION TO DEFENDANT THYSEENKRUPP ELEVATOR

CORPORATION'S MOTION FOR SUMMARY JUDGMENT with the Clerk of

Court using the CM/ECF system which will automatically send email notification

of such filing to the following attorneys of record:

> David Kresser
> Fisher & Phillips LLP
> 1075 Peachtree Street
> Suite 3500
> Atlanta, GA  30309
>
> Tiffani H. Casey
> Fisher & Phillips LLP
> 1075 Peachtree Street, NE
> Suite 3500
> Atlanta, GA  30309

This 11th day of January, 2013.

> ____s/Tremain C.Mattress
> Tremain C. Mattress, Esq.
> Georgia Bar No. 940529

BARRETT & FARAHANY, LLP
1100 Peachtree Street NE
Suite 500
Atlanta, GA 30309
(404) 214-0120