IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LAURA M. D'ELIA,

            Plaintiff,

    v.

THYSSENKRUPP ELEVATOR
CORPORATION,

          Defendant.

CIVIL ACTION FILE NO.

1:11-CV-3521-SCJ-JFK

## **FINAL REPORT AND RECOMMENDATION**

Plaintiff Laura M. D'Elia filed the above-styled employment discrimination action on October 14, 2011.  [Doc. 1].  Plaintiff D'Elia alleges that Defendant ThyssenKrupp Elevator Corporation subjected her to racial discrimination, retaliation, and a racially hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq*.  [Id.].  Defendant has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 on Plaintiff's claims based upon the pleadings, statements of material facts, exhibits, and discovery materials submitted to the court.  [Doc. 50].

**I.     Facts**

When evaluating the merits of a motion for summary judgment, the court must "view the evidence and all factual inferences raised by it in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-moving party." Comer v. City of Palm Bay, Florida, 265 F.3d 1186, 1192 (11th Cir. 2001). However, mere conclusions and unsupported self-serving statements by the party opposing summary judgment are insufficient to avoid summary judgment. See Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005). Therefore, the evidence presented by the parties having been evaluated in accordance with the foregoing principles, the following facts are deemed to be true for the limited purpose of evaluating Defendant's motion [Doc. 50] for summary judgment.

Defendant ThyssenKrupp Elevator Corporation ("ThyssenKrupp") has more than 30,000 employees worldwide and operates approximately five branches in Georgia. [Plaintiff's Statement of Material Facts ("PSMF") ¶¶ 1, 2]. In October 2008, Plaintiff Laura D'Elia began working for ThyssenKrupp as a temporary employee at the company's Kennesaw facility in the Cash Applications ("CAP") Department. [Defendant's Statement of Material Facts ("DSMF") ¶ 1; PSMF ¶ 3]. There are

approximately sixty employees located at the Kennesaw facility where Plaintiff was employed.  [PSMF ¶ 3].

In March 2009, Plaintiff D'Elia was hired as a regular CAP Specialist in the CAP Department.  [DSMF ¶ 2].  Lisa Gray, the CAP Department Manager, made the decision to hire Plaintiff while Supervisor Joi Simmons was on leave.  [PSMF ¶ 6]. According to Plaintiff, Ms. Simmons, who is African-American, did not like Plaintiff because she is white.  [Plaintiff's Deposition ("Pla. Dep.") at 23, 151-52].  Ms. Simmons allegedly told Ms. Gray not to hire Plaintiff.  [PSMF ¶ 7].  In addition, Ms. Simmons referred to Plaintiff and co-worker Kasey Allen as the "white girls." [PSMF ¶ 11].  Plaintiff first complained about racial discrimination against Ms. Simmons in June of 2009.  [PSMF ¶ 12; Pla. Dep. at 149-54].  At that time, Plaintiff told Human Resources ("HR") Generalist Karin Gibson that Ms. Simmons does not like white people.  [PSMF ¶ 13; Pla. Dep. at 149-60].

Plaintiff's personnel file contains two warnings for tardiness dated July 16, 2009, and February 8, 2010.  [DSMF ¶¶ 3, 7].  Her personnel file also contains a "Written Warning for Poor Job Performance" and a document entitled "Performance Improvement Program" dated August 4 and 5, 2009, respectively.  [DSMF ¶¶ 4, 5]. After receiving the August 2009 warning and performance improvement plan, Plaintiff

3

anonymously contacted the ThyssenKrupp employee hotline on two occasions and complained about Supervisor Joi Simmons. [DSMF ¶ 6; Gibson Affidavit ("Aff.") ¶ 8, Ex. 4]. HR Generalist Karin Gibson investigated Plaintiff's complaint and prepared a summary of her investigation. Ms. Gibson could not substantiate Plaintiff's claims. [Id.].

Defendant ThyssenKrupp's fiscal year commences October 1. [DSMF ¶ 23]. Each employee is supposed to receive a yearly performance review, which determines if the employee receives a raise or a bonus. [PSMF ¶ 19]. Ms. Simmons drafted a fiscal year 2010 performance evaluation for Plaintiff as of August 5, 2010. [Gibson Aff. ¶ 12; Simmons Declaration ("Dec.") ¶ 5, Exs. 1, 2; Doc. 50, Exs. A, B; Simmons Dep. at 73-74; DSMF ¶ 24]. Ms. Simmons gave Plaintiff an overall rating of "meets standards" and recommended that Plaintiff receive a pay increase and a bonus for fiscal year 2010. [Simmons Dec. ¶ 5, Exs. 1, 2; DSMF ¶ 25]. Ms. Simmons was scheduled to meet with Plaintiff and the other CAP Specialists on August 17, 2010, to review their performance evaluations. [Simmons Dec. ¶ 5; Gibson Aff. ¶ 14].

On August 12, 2010, at 9:56 a.m., Ms. Simmons sent an email to the CAP Department which stated the following: "Laura [Plaintiff] still has 21 items of logged items which is 4 batches. If any of you are done with yesterdays work please help her

4

out." [Pla. Dep. at 189, Ex. 11; DSMF ¶ 8].  Less than an hour and a half later at 11:23

a.m., Plaintiff sent an email to Manager Lisa Gray regarding Ms. Simmons.  [Pla. Dep.

at 193-94, Ex. 12; DSMF ¶ 9].  Plaintiff's August 12th email to Ms. Gray stated, in part,

"I honestly am feeling I am being discriminated against, for whatever reason I don't

know . . . ."  [DSMF ¶ 11].  Plaintiff's email did not mention race.  [DSMF ¶ 10].

Ms. Gray held a meeting with Ms. Simmons and Plaintiff on August 16, 2010.

[DSMF ¶ 12].  Plaintiff testified:

> [Ms. Gray] gave me the opportunity to speak and tell . . . why I felt I was
> being discriminated against and why I felt I was being treated differently
> than other people.  And the moment I started to talk, Joi Simmons across
> from me, she stood up and slammed her hands on the table.  And the chair
> has rolls, so the chair slung back and she leaned over and she said that I
> was a f-ing liar and that everything I'm saying is a lie, and she turned to
> look at Lisa [Gray].  And Lisa had stood up to tell her to sit down, and
> she was like no, I'm not sitting down.  And she's screaming and she said
> I told you, Lisa, I've been telling you since she got here.  I told you not
> to hire her.  I've been trying to tell you that she's crazy.  I've been trying
> to convince this whole department that she's crazy, haven't I, Lisa.  And
> she looked at me and she's like, you're crazy.  That's why you take them
> pills, and somebody needs to call your doctor . . . .

[Pla. Dep. at 200].  During the meeting, Plaintiff informed Ms. Simmons and Ms. Gray

that she intended to file a charge of discrimination with the Equal Employment

Opportunity Commission ("EEOC").  [PSMF ¶ 18].  On August 16, immediately

following the meeting, Plaintiff filed a complaint with ThyssenKrupp's employee

hotline.   [DSMF ¶ 13].   According to the ThyssenKrupp hotline report, Plaintiff alleged *inter alia* the following:

> On a weekly basis, since August of 2009, Laura D'Elia is unfairly treated and discriminated against by her supervisor, Joi Simmons.  At 11:30 a.m., on August 16, 2010, during a meeting with Joi and Lisa Gray, Laura's manager, Laura discussed her concern about Joi . . . .  Laura also asked Joi if she is being discriminated against for being Caucasian because Joi and Lisa are African-American.  Laura said Joi did not directly address the issue and became progressively rude to her.  Laura said she felt as if Lisa and Joi were both against her.  Laura said during the meeting Joi yelled at her stating all of the problems in the department stemmed from her.

[Gibson Aff. ¶ 13, Ex. 6].  The report also stated that Plaintiff "does not know why Joi [Simmons] is discriminating against her and treating her unfairly."  [Id.; DSMF ¶ 14].  In addition to filing a complaint with the employee hotline, Plaintiff emailed Manager Greg Gerdeman on August 16, 2010.  [DSMF ¶ 15].

Although Supervisor Joi Simmons was scheduled to meet with Plaintiff on August 17, 2010, to review her performance evaluation, HR Generalist Karin Gibson instructed Ms. Simmons not to meet with Plaintiff in light of the confrontational August 16th meeting that Ms. Gray had held with Plaintiff and Ms. Simmons.  [Simmons Dep. at 73-74; Gibson Aff. ¶¶ 14, 15; Simmons Dec. ¶ 5; DSMF ¶ 26.  As a result, no performance review meeting for fiscal year 2010 was ever conducted with

6

Plaintiff.  [PSMF ¶ 21].  However, Plaintiff received a 2% pay increase and a $1,575 bonus for fiscal year 2010 based in part on her 2010 performance review and Ms. Simmons' recommendation that Plaintiff receive a pay increase and a bonus. [Simmons Dec. ¶ 5, Exs. 1, 2; Simmons Dep. at 73-74; DSMF ¶¶ 25, 27].

On August 17, 2010, Plaintiff emailed HR Generalist Karin Gibson complaining about Ms. Simmons.  [DSMF ¶ 17].  The email to Ms. Gibson did not mention race. [DSMF ¶ 18].  Ms. Gibson asked Plaintiff to provide her with information that would support Plaintiff's complaint against Ms. Simmons.  [DSMF ¶ 19].  On August 19, Plaintiff sent Ms. Gibson numerous emails relating to Ms. Simmons and the CAP Department.  [DSMF ¶ 20].  Ms. Gibson conducted an investigation into Plaintiff's complaint against Ms. Simmons and drafted an investigation summary dated September 2.  [DSMF ¶ 21].  Ms. Gibson met with Plaintiff on September 3, 2010, to discuss the results of her investigation.  Ms. Gibson reported to Plaintiff that she could not substantiate her discrimination claim.  [DSMF ¶ 22].

Plaintiff requested and was granted leave beginning September 7, 2010.  [DSMF ¶ 29].  Plaintiff's doctor removed her from work due to workplace stress.  [PSMF ¶ 25].  On September 8, the day after she went out on leave, Plaintiff filed a charge of discrimination with the EEOC.  [DSMF ¶ 30; Doc. 1, Ex. A].  Plaintiff checked the

7

boxes marked "race" and "retaliation" and indicated that the earliest date of discrimination was August 12, 2010, the date of the Simmons email. [DSMF ¶ 31; Doc. 1, Ex. A]. In the narrative portion of the EEOC charge, Plaintiff wrote:

> I began my employment with the above-named employer in March 2009, as a Cash Application Specialist. On August 12, 2010, I filed an internal complaint of discrimination against my immediate supervisor, Joi Simmons (African American). After complaining of discrimination, Lisa Gray, Manager, had a meeting with Ms. Simmons and co-workers Kaysey Allen and Marlene Acosta. During the meeting, Ms. Simmons verbally attacked me and made the statement that something was mentally wrong with me.

[Doc. 1, Ex. A]. Plaintiff's leave ended on November 30, 2010, and she returned to work on or about December 5, 2010. [DSMF ¶ 29].

Defendant ThyssenKrupp decided to eliminate one of the six CAP Department Specialist positions effective October 1, 2010, the beginning of the fiscal year. [DSMF ¶¶ 23, 33]. This decision was made in April 2010. [Id.]. The company decided that the specific CAP Specialist with the least amount of company service would be the position eliminated in connection with the 2010 CAP Department headcount reduction. [DSMF ¶ 34]. Felicia Jongue began working in the CAP Department one month after Plaintiff. [PSMF ¶ 8]. Joi Simmons testified that she originally believed that Ms. Jongue had the least amount of company service. [Simmons Dep. at 126-27].

8

However, Ms. Jongue had previously worked for ThyssenKrupp and returned to work for the company less than six months later. [Simmons Dep. at 126-27]. Plaintiff had the least amount of service with ThyssenKrupp compared to the other five CAP Department Specialists, and her position was eliminated in October 2010 while she was on leave. [DSMF ¶¶ 29, 36].

In January 2011, Plaintiff was offered and accepted a position in the Accounts Payable Department. [Pla. Dep. at 80, 91; Gibson Aff. ¶ 26; DSMF ¶ 37]. Plaintiff's pay and benefit eligibility did not change after she took a position in Accounts Payable. [DSMF ¶¶ 38, 40]. Plaintiff's schedule and work location also did not change. [DSMF ¶ 39].

Approximately a year later, in January 2012, Plaintiff was discharged from her Accounts Payable Department position. [DSMF ¶ 42]. Plaintiff was not under the supervision of Joi Simmons or Lisa Gray while she worked in Accounts Payable, and neither Ms. Simmons nor Ms. Gray was involved in the decision to terminate Plaintiff's employment. [DSMF ¶ 43].

Additional facts will be set forth below as they become necessary for discussion of Plaintiff's claims.

9

## II.     Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (amended 2010). Rule 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. See Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2511 (1986).

The movant bears the initial burden of asserting the basis of his motion, and that burden is a light one. See Celotex, 106 S. Ct. at 2553. The movant is not required to negate his opponent's claim. See id. Rather, the movant may discharge this burden merely by "'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." Id. at 2554.

10

When evaluating a motion for summary judgment, the court must view the evidence and factual inferences in the light most favorable to the nonmoving party. See Frederick v. Sprint/United Mgmt. Co., 246 F.3d 1305, 1309 (11th Cir. 2001). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). Instead, "the nonmoving party must present evidence beyond the pleadings showing that a reasonable jury could find in its favor." Fickling v. United States, 507 F.3d 1302, 1304 (11th Cir. 2007) (citing Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990)).

The court will apply these standards in ruling on Defendant's motion for summary judgment.

## III. Discussion

### A. Administrative Requirements

Plaintiff D'Elia asserts that Defendant ThyssenKrupp subjected her to racial discrimination, retaliation, and a racially hostile work environment in violation of Title VII. [Doc. 1]. Although Plaintiff's complaint includes numerous allegedly adverse actions, Defendant argues that Plaintiff's Title VII claims are limited to the actions which occurred around August 2010. [Doc. 50 at 13]. According to Defendant,

11

Plaintiff's claims based on other adverse actions are barred because they are beyond the scope of her EEOC charge.  [Id.].

"Before filing a Title VII action in court, a plaintiff first must file a charge of discrimination with the EEOC."  Anderson v. Dunbar Armored, Inc., 678 F. Supp. 2d 1280, 1303 (N.D. Ga. 2009) (citing Gregory v. Georgia Dep't of Human Resources, 355 F.3d 1277, 1279 (11th Cir. 2004)).  The charge must be filed within 180 days of the alleged discriminatory act.[1]  See, e.g., Zipes v. Trans World Airlines, 102 S. Ct. 1127 (1982).  The Eleventh Circuit has held that a "'plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'"  Gregory, 355 F.3d at 1280 (citations omitted); accord Eastland v. Tennessee Valley Auth., 714 F.2d 1066, 1067 n.9 (11th Cir. 1983) ("The starting point for determining the permissible scope of the judicial complaint is the EEOC charge and investigation."); Waldemar v. American Cancer Soc'y, 971 F. Supp. 547, 553 (N.D. Ga. 1996) ("Claims omitted from the EEOC charge may still be litigated when 'reasonably related' to those claims brought in the EEOC charge.").  Thus, "[i]f not reasonably related, the court is precluded from

---

[1]Title VII provides, in pertinent part, "A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred. . . ."  42 U.S.C. § 2000e-5(e).

12

considering claims not raised in the EEOC complaint." <u>Waldemar</u>, 971 F. Supp. at 553. The reason for this rule is that under the statutory scheme of Title VII, the EEOC is given the first opportunity to investigate the alleged discrimination and attempt to achieve voluntary compliance. <u>See</u> <u>Sanchez v. Standard Brands, Inc.</u>, 431 F.2d 455, 466 (5th Cir. 1970). "Only if the EEOC fails to achieve voluntary compliance will the matter ever become the subject of court action . . . ." <u>Id.</u>

In the present case, Plaintiff D'Elia filed her charge of discrimination with the EEOC on September 8, 2010. [DSMF ¶ 30; Doc. 1, Ex. A]. Plaintiff checked the boxes marked "race" and "retaliation" and indicated that the earliest date of discrimination was August 12, 2010. [DSMF ¶ 31; Doc. 1, Ex. A]. In the narrative portion of the EEOC charge, Plaintiff wrote:

> I began my employment with the above-named employer in March 2009, as a Cash Application Specialist. On August 12, 2010, I filed an internal complaint of discrimination against my immediate supervisor, Joi Simmons (African American). After complaining of discrimination, Lisa Gray, Manager, had a meeting with Ms. Simmons and co-workers Kaysey Allen and Marlene Acosta. During the meeting, Ms. Simmons verbally attacked me and made the statement that something was mentally wrong with me.

13

[Doc. 1, Ex. A].  Plaintiff also wrote: "I believe that I have been discriminated against because of my race (White) and in retaliation for my opposition to unlawful employment practices, in violation of Title VII . . . ."  [Id.].

Based on these facts, the court finds that Plaintiff's Title VII claims are limited to those actions which occurred around August 2010.  [Doc. 50 at 13].  These include Ms. Simmons' statements toward Plaintiff during the meeting on August 16, 2010, Plaintiff's allegedly small raise and bonus for fiscal year 2010, and Defendant's failure to provide Plaintiff with a performance review.  In her response brief, Plaintiff notes that she "has limited her arguments to the events surrounding August 2010."  [Doc. 54 at 8 n.3].  All other adverse actions are outside the scope of Plaintiff's EEOC charge and are, therefore, barred.  See Wills v. Postmaster General, 300 Fed. Appx. 748, 750-51 (11th Cir. 2008) (affirming district court's decision to bar plaintiff's claims for failure to exhaust available administrative remedies because they were not mentioned in the EEOC charge).  The court next turns to the merits of Plaintiff's racial discrimination and retaliation claims.

**B.      Racial Discrimination and Retaliation Claims**

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of

14

employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). Title VII also acts to shield employees from retaliation for certain protected practices. Specifically, the statute provides, in pertinent part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). The plaintiff carries the burden of demonstrating that the defendant has unlawfully discriminated or retaliated against her. See Texas Dep't of Community Affairs v. Burdine, 101 S. Ct. 1089, 1093-95 (1981). "A plaintiff may prove a claim of intentional discrimination through direct evidence, circumstantial evidence, or through statistical proof." Rioux v. City of Atlanta, Georgia, 520 F.3d 1269, 1274 (11th Cir. 2008). Because Plaintiff D'Elia relies on circumstantial evidence to support her racial discrimination and retaliation claims, the court will use the framework articulated in McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817, 1824-25 (1973), to evaluate her claims. Under this framework, the allocation of burdens and order of presentation and proof are as follows: (1) the plaintiff has the burden of proving a *prima facie* case of discrimination or retaliation; (2) if the plaintiff succeeds

15

in proving the *prima facie* case, the burden (of production) shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the action taken against the employee; and (3) should the defendant carry this burden, the plaintiff must have an opportunity to prove that the legitimate reason offered by defendant was a pretext for discrimination.  See id.

A plaintiff can establish a *prima facie* case of racial discrimination by showing that: (1) she is a member of a racially protected class; (2) she was qualified to do the job; (3) she was subjected to an adverse job action; and (4) she was treated less favorably than a similarly situated individual outside her protected class.  See Maynard v. Board of Regents, 342 F.3d 1281, 1289 (11th Cir. 2003).  There is no dispute that Plaintiff D'Elia is able to establish the first two *prima facie* elements of her racial discrimination claim.  She is white and was qualified for her position as a Specialist in the Cash Applications ("CAP") Department.  [DSMF ¶ 2].

To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression. Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1311 (11th Cir. 2002); Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1454 (11th Cir. 1998).  Plaintiff is able to establish

16

the first *prima facie* element in support of her retaliation claim because she complained about racial discrimination in August 2010. [PSMF ¶ 12; Pla. Dep. at 200]. During a meeting with Lisa Gray and Ms. Simmons on August 16, 2010, Plaintiff alleged that Joi Simmons was subjecting her to discrimination based on race, and she stated that she intended to file an EEOC charge of discrimination. [PSMF ¶ 18]. Immediately following the meeting, Plaintiff filed a complaint with ThyssenKrupp's employee hotline alleging racial discrimination. [DSMF ¶¶ 13, 14; Gibson Aff. ¶ 13, Ex. 6]. Plaintiff also filed a charge of discrimination with the EEOC on September 8, 2010, alleging retaliation and racial discrimination. [DSMF ¶¶ 30, 31; Doc. 1, Ex. A].

The next issue to be addressed for both her retaliation and racial discrimination claims is whether Plaintiff was subjected to an adverse employment action. To satisfy this element, Plaintiff must show that the complained-of action was materially adverse.[2] "[O]nly those employment actions that result in 'a *serious and material*

---

[2]"[T]he 'adverse action' test applied to retaliation claims is distinct from that applied to disparate treatment claims." Sharpe v. Global Sec. Intern., 766 F. Supp. 2d 1272, 1291 (S.D. Ala. 2011). The Supreme Court has held that a plaintiff bringing a retaliation claim "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern and Santa Fe Railway Co. v. White, 126 S. Ct. 2405, 2415 (2006) (citations and internal quotation marks omitted). This standard for determining adverse actions in retaliation claims is "decidedly more relaxed" than that used in

change in the terms, conditions, or privileges of employment' will suffice." <u>Howard v. Walgreen Co.</u>, 605 F.3d 1239, 1245 (11th Cir. 2010) (quoting <u>Davis v. Town of Lake Park, Florida</u>, 245 F.3d 1232, 1239 (11th Cir. 2001) (emphasis in original)). "'Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances.'" <u>Id.</u> (quoting <u>Davis</u>, 245 F.3d at 1239).

Plaintiff argues that Defendant ThyssenKrupp took an adverse action against her when it failed to provide her with a performance review in August 2010.  [Doc. 54 at 9-13].  Plaintiff also alleges that the company gave her a smaller raise and bonus for fiscal year 2010 than other employees outside her protected class with the same review rating.  As Plaintiff correctly notes, in <u>Gillis v. Georgia Dep't of Corrections</u>, 400 F.3d 883, 886-88 (11th Cir. 2005), the Eleventh Circuit addressed the issue of whether a plaintiff had been subjected to an adverse employment action when she received a

---

discrimination claims.  <u>Crawford v. Carroll</u>, 529 F.3d 961, 973 (11th Cir. 2008). Plaintiff D'Elia has asserted both a retaliation claim and a discrimination claim. Because, as discussed *infra*, the court has found that Defendant's action in giving Plaintiff a smaller raise and bonus constitutes an adverse action under the "more stringent standard" used in discrimination claims, the court will not specifically address the "more liberal standard applicable in the retaliation setting." <u>Pears v. Mobile County</u>, 645 F. Supp. 2d 1062, 1094 (S.D. Ala. 2009).

18

performance evaluation of "met expectations." The evidence in <u>Gillis</u> revealed that the plaintiff, an African-American female, would have received additional compensation of more than $900 per year if she had been rated as "exceeded expectations." <u>Id.</u> Because "there was evidence that Gillis's evaluation and Gillis's compensation were inextricably intertwined[,]" the Eleventh Circuit held that the plaintiff was able to show that she had suffered an adverse job action. <u>Id.</u> at 888.

In the present case, the evidence establishes that each ThyssenKrupp employee is supposed to receive a yearly performance review, which determines if the employee receives a raise or a bonus. [PSMF ¶ 19]. Ms. Simmons drafted a fiscal year 2010 performance evaluation for Plaintiff as of August 5, 2010. [Gibson Aff. ¶ 12; Simmons Dec. ¶ 5, Exs. 1, 2; Doc. 50, Exs. A, B; Simmons Dep. at 73-74; DSMF ¶ 24]. Ms. Simmons gave Plaintiff an overall rating of "meets standards" and recommended that Plaintiff receive a pay increase and a bonus for fiscal year 2010. [Simmons Dec. ¶ 5, Exs. 1, 2; Simmons Dep. at 73-74; DSMF ¶ 25]. Although Ms. Simmons was scheduled to meet with Plaintiff on August 17, 2010, to review her performance evaluation, Ms. Gibson instructed Ms. Simmons not to meet with Plaintiff in light of the confrontational August 16th meeting that Ms. Gray had held with Plaintiff and Ms. Simmons. [Simmons Dep. at 73-74; Gibson Aff. ¶¶ 14, 15; Simmons

Dec. ¶ 5; DSMF ¶ 26].  As a result, no performance review meeting for fiscal year 2010 was ever conducted with Plaintiff.  [PSMF ¶ 21].  Nevertheless, Plaintiff subsequently received a 2% pay increase and a $1,575 bonus for fiscal year 2010 based in part on her 2010 performance review and Ms. Simmons' recommendation that Plaintiff receive a pay increase and a bonus.  [Simmons Dec. ¶ 5, Exs. 1, 2; Gibson Aff., Ex. 12; DSMF ¶¶ 25, 27].  Plaintiff acknowledges that she received a pay increase and bonus for fiscal year 2010.  However, she argues that she suffered an adverse action because she was one of three Specialists who were given the lowest pay increases and the smallest bonuses in the CAP Department.  [Doc. 54 at 11].

With regard to Defendant's decision not to have Ms. Simmons conduct a performance review meeting with Plaintiff, the court concludes that a reasonable jury could not find this action to be materially adverse.  Ms. Simmons drafted a performance review for Plaintiff, and there is no evidence that the lack of a meeting about the review impacted Plaintiff's compensation or any other aspect of her job.[3]

---

[3]The court's finding of a lack of adversity with respect to this employment decision applies to both Plaintiff's racial discrimination claim and her retaliation claim. Defendant's decision not to conduct a performance review meeting does not constitute an adverse action in support of Plaintiff's retaliation claim because the action would not "have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Burlington Northern, 126 S. Ct. at 2415.

20

However, the court finds that Plaintiff has offered evidence that Defendant ThyssenKrupp's decision to give her a low salary increase and a small bonus constituted an adverse employment action.

Title VII, as noted *supra*,  makes it unlawful for an employer "to discriminate against any individual with respect to his compensation . . . ."  42 U.S.C. § 2000e-2(a)(1).  The Eleventh Circuit in <u>Gillis</u> wrote, "Following the language of the statute, we have indicated before that actions that affect compensation are considered adverse employment actions."  <u>Id.</u>, 400 F.3d at 887.  Defendant gave Plaintiff D'Elia a salary increase of 2% and a bonus of $1,575 for the 2010 fiscal year.  [Gibson Aff., Ex. 12]. At the same time, Defendant gave three other CAP Specialists larger salary increases and larger bonuses: Kasey Allen was given a 3% raise and a bonus of $1,700; Felicia Jongue was given a 2.75% raise and a bonus of $1,700; and Kindall Cooper was given a 2.5% raise and a bonus of $1,825.  [<u>Id.</u>].  No CAP Specialist received a smaller salary increase or a smaller bonus than Plaintiff.  [<u>Id.</u>].

Defendant argues that Plaintiff cannot show that she suffered an adverse action because she received a pay increase and a bonus that was commensurate with the other

CAP Specialists.[4]  [Doc. 50 at 20; Doc. 55 at 12-13].  This is similar to the argument made by the defendants in <u>Gillis</u> who argued, as summarized by the Eleventh Circuit: "To characterize Gillis's favorable evaluation, and corresponding pay *increase*, as an adverse employment action is, according to the defendants, not supported by logic or by law." <u>Id.</u>, 400 F.3d at 887 (emphasis in original).  The Eleventh Circuit rejected this argument because it found that "the denial of the raise at issue here was an employment decision that significantly affected Gillis's compensation." <u>Id.</u> at 888.  Similarly, in the present case, Plaintiff was given the lowest pay raise and the smallest bonus in the CAP Department.  Because Plaintiff was denied the higher amount of compensation given to other employees in identical positions, she has established the *prima facie* element for both her retaliation and racial discrimination claims requiring her to show that she suffered an adverse employment action. <u>See</u> <u>Crawford</u>, 529 F.3d at 973 (holding that even a "temporary denial of a merit pay increase" that was awarded retroactively constituted an adverse employment action for both plaintiff's race discrimination and retaliation claims).

---

[4]Defendant also contends that the court should "refuse to schedule a jury trial relating to a few hundred dollars in pay. . . ."  [Doc. 55 at 13].

For Plaintiff's retaliation claim, the final *prima facie* element requires her to show that the adverse action was causally related to her protected expression. See Weeks, 291 F.3d at 1311. "The causal link element is construed broadly so that a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001) (citations and internal quotation marks omitted). When determining whether a causal relationship exists, the court is essentially looking to see if any inference of retaliation can be drawn from the circumstances surrounding the employer's action. See Morgan v. City of Jasper, 959 F.2d 1542, 1547 (11th Cir. 1992). If an employer takes an adverse employment action against an employee shortly after becoming aware of the employee's protected expression, then the short amount of time between the two events, standing alone, may be enough to produce an inference of retaliation. See Brungart, 231 F.3d at 799 ("The general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection."). "The shorter the period between the two events, the stronger the inference that the adverse action was improperly motivated; conversely, a long period of time between the protected conduct and

23

adverse-employment action will negate an inference that the adverse action was caused by the protected expression." Johnson v. Auburn University, 403 F. Supp. 2d 1101, 1113-14 (M.D. Ala. 2005). In Clark County School Dist. v. Breeden, 121 S. Ct. 1508, 1511 (2001), the Supreme Court stated that "mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action . . . must be 'very close[.]'" The Eleventh Circuit has noted that the Supreme Court in Breeden, 121 S. Ct. at 1511, "cited with approval decisions in which a three to four month disparity was found to be insufficient to show causal connection." Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004).

In the present case, the temporal proximity between Plaintiff's complaint and the adverse action was sufficiently close to establish the causal connection *prima facie* element. Plaintiff D'Elia, as discussed *supra*, made a number of complaints about racial discrimination against Joi Simmons on August 16, 2010. [DSMF ¶ 12; Pla. Dep. at 200]. That day, Plaintiff made allegations of racial discrimination in a complaint filed with ThyssenKrupp's employee hotline and during a meeting with CAP Department Manager Lisa Gray. [DSMF ¶¶ 13, 14; PSMF ¶ 18; Gibson Aff. ¶ 13, Ex. 6]. On September 8, 2010, Plaintiff also filed an EEOC charge of discrimination. [DSMF ¶¶ 30, 31; Doc. 1, Ex. A]. The evidence reveals that decisions about bonuses

24

and salary increases were made at some point between August 17, 2010, when Ms.

Simmons reviewed the performance evaluations with all the CAP Specialists except

Plaintiff, and October 1, 2010, when ThyssenKrupp's fiscal year commenced.

[Simmons Dep. at 65, 70-75, 185-87; Simmons Dec. ¶ 5; DSMF ¶ 23].  Thus, the

alleged retaliatory action took place between a day and six weeks after Defendant

ThyssenKrupp learned of Plaintiff's complaints of racial discrimination.  This

timeframe is sufficient to support a plausible inference of a causal relationship. Farley

v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1337 (11th Cir. 1999) ("The charge was

made May 19, 1995 and Farley was fired seven weeks later on July 10, 1995. We find

this timeframe sufficiently proximate to create a causal nexus for purposes of

establishing a prima facie case.").  Therefore, the court concludes that Plaintiff is able

to establish a *prima facie* case of retaliation.

For Plaintiff's racial discrimination claim, the final *prima facie* element requires

her to offer evidence that she was treated less favorably than a similarly situated

individual outside her protected class.  See Maynard, 342 F.3d at 1289.  The proper

comparison is to an employee who is "similarly situated in all relevant respects."

Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).  The Eleventh Circuit has

held, "The comparator must be nearly identical to the plaintiff to prevent courts from

second-guessing a reasonable decision by the employer." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004) (citing Silvera v. Orange County School Bd., 244 F.3d 1253, 1259 (11th Cir. 2001)).

Plaintiff D'Elia has identified co-workers Kindall Cooper and Felicia Jongue as similarly situated individuals outside her racially protected class. [Doc. 54 at 11]. Ms. Cooper and Ms. Jongue are African-Americans, and during the 2010 fiscal year, they occupied the same CAP Specialist position as Plaintiff. They also worked in the same CAP Department within ThyssenKrupp's Kennesaw facility and reported to the same supervisor, Joi Simmons. [DSMF ¶ 1; PSMF ¶ 3; Gibson Aff., Ex. 12; Simmons Dep. at 75-81]. Moreover, Ms. Simmons gave Plaintiff, Ms. Cooper, and Ms. Jongue the same grade of "meets standards" on their 2010 performance evaluations. [PSMF ¶¶ 22, 23; Gibson Aff., Ex. 12; Simmons Dep. at 81; Simmons Dec., Ex. 1]. The court finds that Plaintiff has successfully identified similarly situated comparators.

Plaintiff has also offered evidence that Ms. Cooper and Ms. Jongue were treated more favorably by Defendant ThyssenKrupp. As discussed *supra*, Plaintiff D'Elia was given a salary increase of 2% and a bonus of $1,575 for the 2010 fiscal year. [Gibson Aff., Ex. 12]. Despite the fact that Plaintiff was nearly identical to the two comparators in all relevant respects, including being given the same evaluation grade

26

of "meets standards," Defendant gave larger raises and bonuses to Ms. Cooper and Ms. Jongue.  Ms. Cooper was given a 2.5% raise and a bonus of $1,825, and Ms. Jongue was given a 2.75% raise and a bonus of $1,700.  [Gibson Aff., Ex. 12].  Defendant treated the two African-American comparators more favorably than Plaintiff with regard to compensation.  Plaintiff, therefore, is able to establish the final *prima facie* element of her racial discrimination claim.  "The initial burden of establishing a prima facie case of discrimination is not onerous, and [Plaintiff] has carried that burden here."  Gillis, 400 F.3d at 888.

Because Plaintiff has established *prima facie* cases of retaliation and racial discrimination, the burden of production then shifts to Defendant to articulate some legitimate, nondiscriminatory reason for giving Ms. Jongue and Ms. Cooper larger raises and bonuses than it gave Plaintiff.  See Combs v. Plantation Patterns, 106 F. 3d 1519, 1528 (11th Cir. 1997) (citing Burdine, 101 S. Ct. at 1094; McDonnell Douglas, 93 S. Ct. at 1824).  "'[T]o satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had *not* been motivated by discriminatory animus.'"  Id. (quoting Burdine, 101 S. Ct. at 1096) (emphasis in original).  A "'defendant need not persuade the court that it was actually motivated by the proffered reasons.  It is

27

sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.'" Id. (quoting Burdine, 101 S. Ct. at 1094).

Once a defendant meets its burden of production, "the presumption of discrimination created by the McDonnell Douglas framework 'drops from the case,' and 'the factual inquiry proceeds to a new level of specificity.'" Combs, 106 F.3d at 1528 (quoting Burdine, 101 S. Ct. at 1094-95 & n.10). The plaintiff then "has the opportunity to demonstrate that the defendant's articulated reason for the adverse employment action is a mere pretext for discrimination." Holifield, 115 F.3d at 1565 (citing McDonnell Douglas, 93 S. Ct. at 1825). The court "must, in view of all the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct[.]'" Combs, 106 F.3d at 1538 (quoting Cooper-Houston v. Southern Ry. Co., 37 F.3d 603, 605 (11th Cir. 1994)). Plaintiff "'may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" Jackson v. State of Alabama State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005) (quoting Burdine, 101 S. Ct. at 1095). In order to establish pretext

28

through the indirect method, the plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." McCann v. Tillman, 526 F.3d 1370, 1375-76 (11th Cir. 2008) (citations and internal quotation marks omitted).

Although the defendant's burden in the rebuttal stage is "exceedingly light[,]" in the present case, Defendant ThyssenKrupp has failed to carry this burden. Walker v. NationsBank of Florida N.A., 53 F.3d 1548, 1556 (11th Cir. 1995) (citation and internal quotation marks omitted). Defendant has not offered any legitimate, nondiscriminatory reason for giving Ms. Jongue and Ms. Cooper larger salary increases and larger bonuses than it gave Plaintiff. In support of its summary judgment motion, Defendant notes that Plaintiff received the same pay increase and bonus as two other CAP Specialists, Marlin Acosta, who is Hispanic, and Netria Daniel, who is African-American.[5]  [Doc. 55 at 12; Gibson Aff., Ex. 12]. Defendant also points out that Kasey Allen was the CAP Specialist who received the largest pay increase in 2010, and she is white.  [Id.]. Defendant argues that based on these facts, summary

_____

[5]However, Defendant has not cited to evidence of the job performance rating of these two employees in 2010.

29

judgment should be granted on Plaintiff's racial discrimination claim.  Defendant's argument is unpersuasive.

There is no question that a jury would be free to consider the pay increases and bonuses paid to Marlin Acosta, Netria Daniel, and Kasey Allen when evaluating Plaintiff's claims.  The fact remains, however, that once the plaintiff has established a *prima facie* case of discrimination or retaliation, the defendant has the burden of offering a legitimate, nondiscriminatory reason for its actions.  Plaintiff has offered evidence in support of her racial discrimination claim that Ms. Cooper and Ms. Jongue are similarly situated comparators outside her racially protected class who were treated more favorably by Defendant ThyssenKrupp.  With regard to her retaliation claim, Plaintiff has shown that Defendant gave her a smaller pay increase and a smaller bonus shortly after her complaints of discrimination.  As previously discussed, this is all that is required of Plaintiff at the *prima facie* stage.  Because Defendant has failed to offer any reason why Plaintiff received a small salary increase and a small bonus, Defendant's summary judgment motion must be denied.

Even if Defendant ThyssenKrupp had claimed that the two comparators were treated more favorably than Plaintiff on the basis of job performance, the undersigned would recommend that summary judgment be denied.  This is because the record

30

evidence would permit a reasonable jury to conclude that the job performances of CAP Specialists were not what motivated Defendant's 2010 salary and bonus decisions. <u>See Combs</u>, 106 F.3d at 1538. Each fiscal year ThyssenKrupp employees are supposed to receive a performance review. [DSMF ¶ 23; PSMF ¶ 19]. CAP Department Supervisor Joi Simmons testified that an employee's performance review dictates the raise and bonus that he or she will receive. [Simmons Dep. at 65]. In Ms. Simmons' 2010 performance evaluation for Plaintiff, she gave Plaintiff an overall rating of "meets standards" and recommended that Plaintiff receive a pay increase and a bonus for fiscal year 2010.[6] [Gibson Aff. ¶ 12; Simmons Dec. ¶ 5, Exs. 1, 2; Doc. 50, Exs. A, B; Simmons Dep. at 73-74; DSMF ¶¶ 24, 25]. As discussed *supra*, although Ms. Simmons gave CAP Specialists Kindall Cooper and Felicia Jongue the same grade of "meets standards," these two employees received larger pay increases and bonuses than Plaintiff. [Gibson Aff., Ex. 12; PSMF ¶¶ 22, 23].

_____

[6]Defendant notes that Ms. Simmons was "the only person specifically identified by Plaintiff as having engaged in unlawful conduct" and that Ms. Simmons testified that she did not decide the amount of salary increase or bonus. [Doc. 55 at 12-13]. This fact does not support Defendant's summary judgment argument. Even assuming *arguendo* that Ms. Simmons did not determine the exact amount of increases and bonuses that CAP Specialists received, she testified that she made recommendations and was involved in discussions regarding employees' salaries and bonuses. [Simmons Dep. at 70-73].

31

Ms. Simmons testified that Kasey Allen, who is white, was the best performing CAP Specialist in her department. [Simmons Dep. at 80-81]. Ms. Allen received the largest salary increase at 3% compared to: 2.75% for Ms. Jongue; 2.5% for Ms. Cooper; and 2% for Plaintiff. [Gibson Aff., Ex. 12]. However, despite Ms. Allen's superior job performance, she received a smaller bonus than Ms. Cooper and the same bonus as Ms. Jongue. [Simmons Dep. at 80-81; Gibson Aff., Ex. 12]. Based on these facts, the undersigned concludes that even if Defendant had claimed that it gave Ms. Cooper and Ms. Jongue larger salary increases and bonuses than Plaintiff on the basis of job performance, a reasonable jury could find that ThyssenKrupp's "proffered 'legitimate reasons were not what actually motivated its conduct[.]'" Combs, 106 F.3d at 1538 (quoting Cooper-Houston, 37 F.3d at 605).

In summary, Defendant has failed to carry its burden of producing a legitimate, nondiscriminatory reason for giving Ms. Cooper and Ms. Jongue larger salary increases and bonuses than Plaintiff. And even assuming that Defendant had cited job performance as its proffered reason, a jury could find this to be pretextual. Accordingly, it is **RECOMMENDED** that Defendant's summary judgment motion [Doc. 50] be **DENIED** on Plaintiff's racial discrimination and retaliation claims based on her salary increase and bonus in fiscal year 2010.

32

**C.**   **Racially Hostile Work Environment Claim**

Plaintiff D'Elia's final claim is a racially hostile work environment claim brought pursuant to Title VII.  To establish a *prima facie* case of hostile work environment based on race, Plaintiff must show that (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based upon a protected characteristic of the employee, in this case, race; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and to create a discriminatorily abusive working environment; and (5) the defendant is responsible for such environment under either a theory of vicarious or of direct liability.  See Walton v. Johnson & Johnson Servs., Inc., 347 F.3d 1272, 1279-80 (11th Cir. 2003).  Plaintiff alleges that Supervisor Joi Simmons, who is African-American, subjected her to harassment on the basis of her race, white.  However, Plaintiff's arguments on this issue consist entirely of conclusory assertions.  [Doc. 54 at 17-18]. The only evidence found by the court of any unwelcome, race-based conduct occurred when Ms. Simmons allegedly referred to Plaintiff and Kasey Allen as the "white girls." [PSMF ¶¶ 7, 11].  Although this evidence is scant, the court will assume for summary judgment purposes that Plaintiff is able to establish the first three elements of the *prima facie* case.  Whether the harassment was sufficiently severe or pervasive to

33

affect Plaintiff's terms and conditions of employment is the next issue that must be addressed.

An employer violates Title VII by "creating or condoning an environment at the workplace which significantly and adversely affects an employee because of his race or ethnicity, regardless of any other tangible job detriment to the protected employee." Henson v. City of Dundee, 682 F.2d 897, 901 (11th Cir. 1982). Factors courts should consider in deciding whether a hostile environment was created include the frequency and severity of the discriminatory conduct, whether the conduct is threatening or humiliating, and whether the conduct unreasonably interferes with the plaintiff's work performance. See Edwards v. Wallace Community College, 49 F.3d 1517, 1521 (11th Cir. 1995). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment–an environment that a reasonable person would find hostile or abusive–is beyond Title VII's purview." Harris v. Forklift Sys., Inc., 114 S. Ct. 367, 370 (1993). As the Supreme Court has made clear, Title VII is violated when "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' . . . that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment[.]'" Id. (quoting Meritor Savings Bank, FSB v. Vinson, 106 S. Ct. 2399, 2405 (1986)).

Plaintiff D'Elia is unable to show that she was subjected to an objectively hostile or abusive work environment. [Doc. 54 at 17-18]. Plaintiff claims that Ms. Simmons did not like her and that Ms. Simmons told Ms. Gray not to hire Plaintiff. [Pla. Dep. at 23, 149-53; PSMF ¶¶ 12, 13]. In her EEOC charge, Plaintiff also alleged that the following took place during a meeting on August 16, 2010: "Ms. Simmons verbally attacked me and made the statement that something was mentally wrong with me." [Doc. 1, Ex. A]. However, Plaintiff has not cited to any evidence that would permit a reasonable jury to conclude that these actions were taken on the basis of Plaintiff's race. [Doc. 54 at 17-18]. And even if the alleged harassment from Ms. Simmons were based on race, Plaintiff has failed to show that it was sufficiently severe or pervasive to alter the conditions of her employment and create a working environment that was abusive.

Plaintiff also alleges that Ms. Simmons referred to her and Kasey Allen as the "white girls." [PSMF ¶¶ 7, 11]. This comment from Ms. Simmons is the only one cited by Plaintiff that is related to her race. However, it does not even approach the level of severity necessary to bring a Title VII harassment claim. See Barrow v. Georgia Pacific Corp., 144 Fed. Appx. 54, 57-58 (11th Cir. 2005). Plaintiff cannot establish a *prima facie* case of racially hostile work environment. As a result, it is

35

**RECOMMENDED** that Defendant's summary judgment motion [Doc. 50] be **GRANTED** on this claim.

## IV.    Conclusion

For the foregoing reasons and cited authority, the undersigned **RECOMMENDS** that Defendant ThyssenKrupp's summary judgment motion [Doc. 50] be **DENIED** on Plaintiff D'Elia's Title VII racial discrimination and retaliation claims based on her salary increase and bonus in fiscal year 2010.  The undersigned **RECOMMENDS** that Defendant's summary judgment motion [Doc. 50] be **GRANTED** on all other claims asserted by Plaintiff.

All pretrial matters have been concluded with the issuance of this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1), this Court's Local Rule 72.1, and Standing Order 08-01 (N.D. Ga. June 12, 2008).  The Clerk, therefore, is **DIRECTED** to terminate the reference to the Magistrate Judge.

**SO RECOMMENDED**, this 3rd day of June, 2013.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

36